UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HALIMA ADAN,

    Plaintiff,

    v.

AMERICAN SEAFOODS COMPANY, LLC, a Washington limited liability company, et al.,

    Defendants.

CASE NO. C05-1671RSM

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Plaintiff Halima Adan filed this complaint pursuant to the Jones Act, 46 U.S.C. § 688, seeking damages for injuries she received while working in defendant's employ. The matter is now before the Court for consideration of defendants' motion for summary judgment on plaintiff's claims of Jones Act negligence and unseaworthiness. For the reasons set forth below, the Court finds that defendants are entitled to summary judgment on these claims.

FACTUAL BACKGROUND

In her complaint, plaintiff alleges that on June 15, 2005, she was cleaning and fell "when she stepped on a pressure hose entangling her leg." Complaint, p. 2. She states that she fell backward, hitting a machine, and suffered severe injury to her spine as a result. *Id*. She further alleges that defendants failed to provide or allow immediate medical treatment for her injury. *Id*. On these facts, she

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 1

asserts causes of action of negligence and unseaworthiness under the Jones Act, 46 U.S.C. § 688, as well as a claim for maintenance and cure.

Defendants have moved for summary judgment on the negligence and unseaworthiness claims, on the basis that the facts stated by plaintiff in her deposition conclusively demonstrate that they are not liable for plaintiff's injury. At deposition, plaintiff described the circumstances of her fall through an interpreter. She stated that she was cleaning under a table in the fish processing area, at the direction of her supervisor. She was on her knees, using a hose and a sponge. In response to questioning, she described the accident as follows:

Q. And how long had you been cleaning under there before you were injured?

A. You mean that particular place or the whole cleaning?

Q. Underneath the table.

A. 15 to 20 minutes.

Q. And what had you been doing for 15 to 20 minutes before you were injured?

A. I was moving back and forth cleaning with a sponge. . . .

Q. And during this 15 to 20 minutes of cleaning was the hose running during that time?

A. Yeah. The water was going.

Q. Was what?

A. Was going off.

. . . .

Q. And how long is this hose?

A. It's long, but it was curled—you know, it's—it was rounded up like that, on the floor.

Q. Was it coiled more than a couple of times on the floor?

A. Yeah, it was coiled.

Q. And where did the hose attach? Where was the faucet for the hose?

A. On my back, on the wall.

Q. And was it already hooked up when you came to work in that area?

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 2

1   A. Yes. The lead gave it to me, hand it to me.

2   Q. At the time of your accident, were you holding the hose?

3   A. Yes.

4   Q. Do you recall which hand you had it in?

5   A. Before on the left, then when I start working, both hands. That's when I was trying to hold, I slipped on my right foot.

. . . .

7   Q. I asked the question. She's working under the table on her knees holding the hose; is that correct?

9   A. Sometime I was scratching, cleaning, and sometimes I had to use the hose. That was the two positions I was working under the table.

11   Q. And while doing that, how did you come to injure yourself? What happened?

12   A. I was trying to get up. I did not pick up the bucket but I picked up the hose. It was coiled on the floor, the hose. So I stood on the hose and it slipped---I slipped on my foot.

13   INTERPRETER: The hose bothered me. That's what she meant.

14   A. As I was trying to get up from the position, I was trying to stand up, I had the hose in my hand, so I slipped standing on the hose, and I fell back to the floor. There was a belt that I was working was [sic] behind me.

16   . . .

17   Q. You said you stood on the hose?

18   A. Yes.

19   Q. With which foot?

20   A. On the right foot.

21   Q. And did you slip or trip on the hose?

22   A. As I stood on it, it slipped.

23   Q. Your right foot slipped?

24   A. Yes.

25   Q. On the hose itself?

26   A. I didn't want to fall down, you know, when I slipped I couldn't hold myself. I was trying to grab anyplace to hold myself.

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 3

. . . .

Q. What is the dangerous condition that existed where you were working?

A. The hazard, and the danger was, I'm talking about what cause me this accident, it was that hose which was coiled and in that position.

Q. And this is a hose that you'd been using for 15 to 20 minutes before you fell?

A. He handed me and I was doing that job in that position, you know, all that time until—those time—the time frame you mentioned, I was doing. He gave it to me, and I was doing under the table, cleaning.

Q. And you cleaned under the table for 15 to 20 minutes without having any accidents; is that correct?

A. I didn't move, and nothing happened to me. It's just happened when I tried to stand up.

Q. Prior to your accident, you were aware that the hose was on the deck; is that correct?

A. I didn't check. I haven't seen. I was doing my job.

Q. How would you not know the hose is there when you're holding it in your hands?

A. I was—my duty was, you know, to do the job that I was assigned, when the boss gave it to me, cleaning, that position.

Q. And the thing that you blame for your accident is a coiled hose on the deck that you had been using for 15 to 20 minutes; is that correct?

A. Yes.

. . . .

Q. Well, I think you've told me that you blame your accident on a coiled hose. I'm asking is there anything else that caused you to fall?

A. Nothing else I have to blame except that hose. That should have been taken when somebody finishes job.

Q. Should have been taken where?

A. We have been oriented, orientation before our job when we're assigned, whenever you finish your job, you should take the hose and put in a hook on the wall.

Q. When you were cleaning under the conveyer belt, you were using the hose, weren't you?

A. Yes, I was using.

Q. So why would the hose—why do you want the hose coiled on the wall if you're actually using it?

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 4

1  A. What I mean is that the hose is so long that it can—somebody can use beside me, it can be long enough to be at the end of the factory, where I was working, so everybody should put on the hose, hang on the wall, and just use how long you want to use it. . . .

2

3  Q. So the hose is too long?

4  A. Yes, it's too long. It's—it has different length. One is somewhat longer than the one I was using.

5

6  Q. How long was the one you were using?

7  A. I think the coil was like five loop. I think so, on the floor.

8  Q. And during all the time that you were using the hose, you didn't coil it up and stick it on the wall yourself, did you?

9  A. I didn't came [sic] out from the position my lead asked me to do. I was in that—

10  Q. Yeah, but then you start the job, why not coil the hose up if you think it's in the way and get it out of the way before you crawl under there?

11

12  A. When your boss asks you to do something, you don't have to lose any time, you have to do at once, and the job was—there was a time frame that we had to do our duty.

13  Q. Did you complain to your boss about the hose?

14  A. I didn't have time to complain. When he asked me to do, I just went in there and did my job.

15  Q. So the answer is no?

16  A. No.

17  Q. No complaint to your boss prior to your fall?

18  A. He just handed me the hose and said do this job, and I did.

19  Q. Had you cleaned up the factory before?

20  A. Always.

21  Q. Had you used hoses before when cleaning the factory?

22  A. I did when I—prior to that time, I did—I finish cleaning and I put the hose back to the wall.

23  Q. Did you ever have any problems with the hoses prior to this day when you injured yourself?

24  A. No. Overall, I didn't have any problem with my work.

25  Deposition of Halima Adan, Dkt. # 14, pp. 20-30.  Defendants assert that, viewing these undisputed

26  facts in the light most favorable to plaintiff, they are entitled to summary judgment because the facts

27

28  ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 5

conclusively demonstrate that they were neither negligent, nor responsible for an unseaworthy condition.

**A. Negligence under the Jones Act**

The elements of a Jones Act negligence claim are duty, breach of duty, notice and causation. *Ribitzki v. Canmar Reading & Bates, Ltd.*, 111 F. 3d 658, 662 (9th Cir. 1997). The quantum of evidence needed to support a finding of Jones Act negligence is less than that required for common law negligence, so that even the slightest negligence is sufficient to support a finding of liability. *Havens v. F/T Polar Mist*, 996 F. 2d 215, 218 (9th Cir. 1993). However, the vessel owner is not an insurer and is not required to provide an accident-free ship. *Reinhart v. United States*, 457 F. 2d 151, 151 (9th Cir. 1972).

I. Duty

The seaman's employer owes a duty under the Jones Act to provide a safe place to work. *Ribitzki*, 111 F. 3d at 662. The fact that plaintiff was employed by defendant, who then owed a duty to provide her with a safe place to work, is not in dispute.

II. Breach of Duty

The facts stated by plaintiff fail to demonstrate any breach of duty by defendants. In opposing summary judgment, plaintiff contends that "the employer was negligent in allowing the long hose, strewn about the deck, upon which Ms. Adan slipped to clutter the deck. . . ." Opposition, p. 1. However, plaintiff clearly states in her deposition that the long hose was coiled, not "strewn about the deck." Although it was coiled on the deck, not on the wall as she believes it should have been, she fails to explain how she could have then used the hose to perform her assigned work. Further, she states that she slipped on the hose that she was holding in her hand, as she attempted to stand up. The extra length of hose was thus immaterial to this accident: according to plaintiff herself it was the hose right by her feet, held in her own hand, that caused her to slip. The facts as stated by plaintiff thus clearly demonstrate that her slip and fall were not caused by any breach of duty on defendants' part.

III. Notice

An employer is only liable under the Jones Act for negligence if the employer or its agent knew, or should have known, of the dangerous condition that caused the accident. *Ribitzki*, 111 F. 3d at 663.

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 6

Plaintiff here clearly stated that she did not complain to her supervisor of what she perceived as a dangerous condition regarding the hose. She has not otherwise alleged or shown how her supervisor should have known that the hose was a danger to her. She has therefore not met the notice requirement.

### IV. Causation

Finally, under the so-called "featherweight" causation standard, a Jones Act plaintiff must only state facts which show that the employer's negligence played " 'any part . . . even the slightest, in producing the injury . . . for which damages are sought.'" *Id.*, *quoting Lies v. Farrell Lines, Inc.,* 641 F. 2d 765, 771 (9th Cir. 1981). Plaintiff's own statement shows that she slipped on the hose she was holding in her hand, as she attempted to rise from a kneeling position on the floor. Although she complains of the length of hose and the fact that it was not coiled on the wall, she fails to demonstrate any connection whatsoever between the length of hose and her slip on the portion of hose she held during her work. She has thus not shown that any negligence on the part of her employer played even the slightest part in causing her injured back.

### V. Conclusion on Negligence Claim

Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotrex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this burden, the opponent must set forth specific facts showing that there remains a genuine issue for trial. F.R.Civ. P. 56(e).

Here, the undisputed facts as stated by plaintiff demonstrate that defendants are entitled to judgment as a matter of law on the Jones Act negligence claim. As shown above, plaintiff's deposition statement shows neither a breach of duty, notice, nor causation. Defendants' motion for summary

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 7

judgment on this claim shall accordingly be granted.

**B. Unseaworthiness Claim**

A shipowner has an absolute duty to furnish a seaworthy ship, meaning one that is reasonably fit for its intended use. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549-550 (1960). To establish a claim for unseaworthiness, plaintiff must establish that her injury was caused by a piece of equipment on the ship, the equipment was not reasonably fit for its intended purpose, and the unseaworthy condition proximately caused her injuries. *Ribitzki*, 111 F. 3d at 664. Unseaworthiness is a cause of injury if it was a substantial (rather than slight) factor in causing the injury. *Id*. at 665.

In opposing summary judgment on the unseaworthiness claim, plaintiff argues that "the presence of the unstowed hose that cluttered the deck in the work area rendered the vessel unseaworthy." Plaintiff's Opposition, p. 7. However, according to plaintiff's own statement of facts, it was not the "unstowed" hose, but rather the hose that she was using, that caused her to slip and fall. Thus, even if plaintiff were to persuade a trier of fact that the extra length of hose could be considered an unseaworthy condition, she has failed to demonstrate that this coiled and unused part of the hose was a substantial factor in causing her injury. She therefore cannot establish a claim for unseaworthiness. Defendants are entitled to summary judgment on this claim as well.

**C. Medical Care**

Plaintiff also alleges in her complaint that defendants were negligent, and the vessel unseaworthy, because she was not timely provided with medical care. In response to this claim, defendants offer plaintiff's deposition testimony that she was taken off of work duty immediately after the accident, and that she was seen by the ship's nurse nearly every day for the rest of the voyage. They also offer plaintiff's medical records, showing that she was seen by Charles Peterson, M.D. at the Seattle Orthopaedic and Fracture Clinic on June 28, 2005, four days after the vessel returned to port. Dkt. # 14, p. 46. Dr. Peterson diagnosed a lumbar strain and prescribed pain medication and physical therapy. *Id*. He continued to see plaintiff for her back and also for a knee contusion which is not part of plaintiff's complaint. *Id*. X-rays of the lumbar spine were normal. *Id.,* p. 47.

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 8

In response to the motion for summary judgment, plaintiff did not present either facts or argument regarding her medical care claim. It appears she has abandoned this claim. Defendants' motion for summary judgment as to this claim shall accordingly be granted.

## CONCLUSION

In responding to the well-supported motion for summary judgment, plaintiff has failed to come forward with any facts that demonstrate that an issue remains for trial on her negligence and unseaworthiness claims. The undisputed facts she stated in her deposition do not demonstrate any negligence on the part of defendants which played even the slightest role in causing plaintiff's injury. Nor do they demonstrate any unseaworthy condition on the vessel or the equipment that was used in the cleaning operation. Defendants' motion for summary judgment on these claims is accordingly GRANTED, and the Jones Act negligence and unseaworthy claims are DISMISSED.

Dated this 7th day of December, 2006.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 9